Teresa A. PENLAND, Plaintiff,

v.

Charles H. LONG, individually and in his official capacity as Sheriff of Buncombe County, Defendant.

J. Ronnie JACKSON, Plaintiff,

v.

Charles H. LONG, individually and in his official capacity as Sheriff of Buncombe County, Defendant.

Civil A. Nos. 1:94CV119, 1:94CV137.

United States District Court,
W.D. North Carolina,
Asheville Division.

Feb. 26, 1996.

C. Frank Goldsmith, Jr., Goldsmith & Goldsmith, Marion, NC, for Teresa A. Penland.

William A. Blancato, Bennett & Blancato, LLP, Winston–Salem, NC, for North Carolina State Bureau of Investigation and Charles H. Long.

Joseph P. McGuire, McGuire, Wood & Bissette, P.A., Asheville, NC, for Glenn O'Neal, Multimedia Newspapers of North Carolina, Inc. dba Asheville Citizen–Times, Sherrill Barber, River City Broadcasting dba WLOS–TV Station.

Sean P. Devereux, Whalen, Hay, Pitts, Hugenschmidt, Master & Devereux, Asheville, NC, for J. Ronnie Jackson.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THESE MATTERS** are before the Court on the Defendant's Motion for Summary Judgment and Motion to Amend Answer, both filed October 16, 1995. The Plaintiffs filed a request for a hearing on the Defendant's Motion for Summary Judgment on February 20, 1996. For the reasons stated below, the Defendant's Motion for Summary Judgment is denied, the Defendant's Motion to Amend Answer is granted, and the Plaintiff's request for a hearing on the Defendant's Motion for Summary Judgment is denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 17, 1993, an inmate in the Buncombe County Jail alleged that she had been sexually assaulted on July 15, 1993, by Plaintiff J. Ronnie Jackson, a jailer and shift supervisor in the Jail. Plaintiff Teresa A. Penland was the matron in charge of the floor where the female inmates were housed on the night the assault allegedly occurred.

The Buncombe County Sheriff's Department began an investigation of the allegation; subsequently, the North Carolina State Bureau of Investigation ("SBI") assumed the investigation at Defendant Long's request. Plaintiff Jackson denied the allegations, and Plaintiff Penland denied any knowledge of an assault.

On August 5, 1993, Defendant Long dismissed both Plaintiffs. On the same date, he issued a press release stating:

FOR IMMEDIATE RELEASE 8–5–93

As a result of an internal investigation by the Buncombe County Sheriff's Department, two detention officers have been dismissed from employment at the Buncombe County Detention Center.

The investigation was ordered by Sheriff Charles H. Long after allegations were made of an alleged assault on an inmate in the custody of the Buncombe County Jail.

Sheriff Long has requested that the State Bureau of Investigation conduct an independent investigation into any possibly (sic) criminal violation arising from this incident.

Further information regarding this matter will not be released at this time, pending investigation.

Exhibit 1 *attached to* Affidavit of William A. Blancato, filed October 16, 1995 ["Blancato Affidavit"]. WLOS–TV broadcasted a story about the matter on August 5, 1993, the transcript of which reads:

Newscaster: Buncombe County Sheriff Charles Long today fired two detention officers at the Buncombe County Detention Center.

Long ordered an investigation of Officers Ronnie Jackson and Teresa Penland after a female prisoner accused Jackson of assaulting her.

Sheriff Long: Anytime we have an assault or anything that might be of an unlawful nature its [sic] a matter of concern . . . we have a high liability in the detention center and we have a lot of worry . . . we don't like for these things to happen.

Newscaster: Long has asked the State Bureau of Investigation to look into possible criminal violations.

He says if the two detention center officers are cleared of any wrongdoing, they could re-apply for their jobs.

Exhibit 4 *attached to* Blancato Affidavit. The *Asheville Citizen–Times* also printed articles regarding the Plaintiffs' dismissals on August 6 and 8, 1993.

In a letter postmarked August 18, 1993, Plaintiff Penland requested a "Civilian Board hearing" on her dismissal; she was advised by Defendant Long's counsel that "there is no provision for appeal in cases where the Sheriff makes a determination to terminate employment," but that "[a]ll personnel decisions, including terminations by the Sheriff, are automatically reviewed by the Sheriff's Review Board." Exhibits 1 and 3 *attached to* Affidavit of Joel B. Stevenson, filed October 13, 1995 ["Stevenson Affidavit"].

Plaintiff Jackson was arrested on May 5, 1994, in connection with the allegations made against him, but all charges were dismissed on October 14, 1994, after evidence of the inmate's history of alleging sexual abuse and treatment for mental disorder was brought to the attention of the Buncombe County District Attorney's office. No criminal charges were ever brought against Plaintiff Penland.

The present action was initiated on July 1, 1994, when Plaintiff Penland filed a complaint alleging the deprivation of her liberty and property without due process of law, in violation of the Fourteenth Amendment of the United States Constitution; the deprivation of her liberty and property except pursuant to the law of the land, in violation of the North Carolina Constitution; and defamation under North Carolina law. Plaintiff Jackson filed a complaint alleging the same causes of action on August 4, 1994. Each plaintiff sought both compensatory and punitive damages, but no injunctive relief. The Plaintiffs' respective cases were consolidated on November 15, 1994, and, on October 16, 1995, Defendant Long filed a motion for summary judgment in the consolidated action as well as a motion to amend his answer to each of the Plaintiffs' complaints.

## II. STANDARD OF REVIEW

■ A motion for summary judgment should be granted when the record reveals "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In ruling upon the Defendant's motion for summary judgment, the Court is required to consider the facts in the light most favorable to the Plaintiffs. *Bishop v. Wood,* 426 U.S. 341, 347–48 n. 11, 96 S.Ct. 2074, 2078–79 n. 11, 48 L.Ed.2d 684 (1976). In his motion for summary judgment, the Defendant contends:

(1) the Plaintiffs' due process "property" claims should be dismissed in that the Plaintiffs have not been deprived of a recognized "property" interest;

(2) the Plaintiffs' due process "liberty" claims should be dismissed in that the Plaintiffs have not been deprived of a recognized "liberty" interest, all public statements of Defendant Long were in fact true, and neither Plaintiff ever requested a name clearing hearing;

(3) the Plaintiffs' due process deprivation claims under the North Carolina Constitution should be dismissed in that no such claims exist;

(4) the Plaintiffs' state law defamation claims should be dismissed because all public statements made by the Defendant were true and because the Plaintiffs cannot prove that he acted with malice in making these statements;

(5) the claims against Defendant Long in his official capacity should be dismissed in that he is entitled to Eleventh Amendment immunity and the Plaintiffs have not in fact stated claims against him in his official capacity; and

(6) the claims against Defendant Long in his individual capacity should be dismissed in that he is entitled to qualified immunity.

The Court considers *de novo* the Defendant's motion to amend his answers.

## III. DISCUSSION

**1. Deprivation of Due Process "Property" Interest.**

■ The procedural safeguards encompassed by the due process clause extend to a

person's continued employment only if he or she has a property interest in that employment. *Pittman v. Wilson County,* 839 F.2d 225, 226 (4th Cir.1988) (citations omitted). In order to have such an interest, a person must have more than an abstract need or desire for it, or a unilateral expectation of it; instead, he or she must have a legitimate claim of entitlement to continued employment. *Id.* at 227.

■ The sufficiency of a claim of entitlement to continued employment must be determined by reference to state law. *Id.* Under North Carolina law, an employee has a property interest only if he has a legitimate claim to continued employment under either a contract, a state statute, or a local ordinance. *Dunn v. Town of Emerald Isle,* .722 F.Supp. 1309, 1311 (E.D.N.C.1989) (citing *Nantz v. Employment Sec. Comm'n,* 290 N.C. 473, 226 S.E.2d 340 (1976)), *aff'd without op.,* 918 F.2d 955 (4th Cir.1990).

■ Chapter 297 of the North Carolina Session Laws of 1973 created a Personnel Advisory Board for the Sheriff's Department of Buncombe County comprised of three judicially-appointed members "interested in promoting a merit system of personnel administration" for the Sheriff's Department. 1973 N.C.Sess.Laws 297. This Board was created to represent the public interest in the improvement of personnel administration, to advise the Sheriff concerning personnel administration and personnel rules, to make investigations concerning personnel administration, and "to hear appeals, receive evidence, determine facts and make recommendations to the Sheriff in case of employee appeals of suspension, demotion and dismissal." *Id.* As these duties suggest, the statute provided that "[a]ny employee who contends that he was demoted, suspended or dismissed because of bias, political affiliation, or for reasons not related to merit, fitness or availability of positions, shall have the right to appeal to the Personnel Advisory Board." *Id.* On the basis of this statute, the Court

finds that the Plaintiffs each possessed a due process "property" interest in continued employment, and that the Defendant is not entitled to summary judgment on this issue.[1]

## 2. Deprivation of Due Process "Liberty" Interest.

■ A constitutionally recognized liberty interest is implicated and the right to procedural due process required when government action threatens an employee's good name, reputation, honor or integrity. *Beckham v. Harris,* 756 F.2d 1032, 1038 (4th Cir.), *cert. denied,* 474 U.S. 903, 106 S.Ct. 232, 88 L.Ed.2d 231 (1985). In such a case, due process requires that the aggrieved individual be afforded a hearing to clear his good name. *Id.*

Neither party has cited a decision of the Fourth Circuit enumerating the elements that must be proven to show the violation of a due process liberty interest under the Fourteenth Amendment. However, according to the Fifth Circuit, a plaintiff must prove that he was discharged; that defamatory charges were made against him in connection with the discharge; that the charges were false; that no meaningful public hearing was conducted pre-discharge; that the charges were made public; that he requested a hearing in which to clear his name; and that the request was denied. *Rosenstein v. City of Dallas,* 876 F.2d 392, 395–96 (5th Cir.1989), *modified,* 901 F.2d 61, *cert. denied,* 498 U.S. 855, 111 S.Ct. 153, 112 L.Ed.2d 119 (1990); see also *Mills v. Leath,* 709 F.Supp. 671, 674 (D.S.C.1988) **(citations omitted) (plaintiff must allege both that the employer created a false and defamatory impression of the reason for the employee's discharge, and that this false impression was publicly disclosed),** and *Davenport v. Casteen,* 878 F.Supp. 871, 879 (W.D.Va.1995) (citations omitted) ("Under most circumstances, a plaintiff's failure to request a name clearing hearing should prevent him from complaining that one was not afforded.").[2] If

---

1. The Court, therefore, does not reach the issue of whether the Buncombe County Sheriff Department's Policy and Procedure Manual also creates such a "property" interest in this case.

2. However, both *Davenport* and the cases cited by the Plaintiffs suggest that a request for a name clearing hearing is not always a required element of the Plaintiffs' claim. See *Andreu v. Sapp,* 919 F.2d 637, 644 (11th Cir.1990) (cita-

these procedural rights are denied to an employee, then he or she may recover damages under 42 U.S.C. § 1983. *Rosenstein,* 876 F.2d at 398.

■ The Defendant first contends that the Plaintiffs cannot satisfy these requirements because all of the Defendant's statements were in fact true and did not implicate the Plaintiffs' due process liberty interests. However, a review of the Defendant's statements, as reported in the media, indicates that the Defendant at least implied that the assault had occurred, and he did not stop at merely asserting that an assault had been alleged.[3] Furthermore, the context of the Defendant's statements clearly suggests that the Plaintiffs were involved in an assault on an inmate. See *Cox v. N. Va. Transp. Comm'n,* 551 F.2d 555, 558 (4th Cir.1976) (link of discharge to investigation even without express statements by employer sufficient to state liberty deprivation claim). Therefore, a jury could find that the Defendant's statements were falsely stigmatizing.

■ The Defendant also contends that neither Plaintiff requested a name clearing hearing, and therefore cannot complain that one was not afforded. Assuming *arguendo* that such a request were a required element of the Plaintiffs' claims, it is clear that Plaintiff Penland wrote to the Defendant requesting a hearing before the "Civilian Board" concerning her dismissal,[4] and that she also contacted Mr. James T. Rice, Sr., a member of the Sheriff's Advisory Board, regarding her dismissal. Affidavit of James T. Rice,

Sr., filed October 20, 1995. Plaintiff Penland was advised that her dismissal would be reviewed by the Sheriff's Advisory Board, but she was never informed that she had the right to appear before this Board, nor was she informed as to when the Board would meet to discuss her dismissal. Exhibit 3 *attached to* Stevenson Affidavit; Affidavit of Teresa A. Penland, filed February 12, 1996 ["Penland Affidavit"]. Furthermore, there is evidence that Plaintiff Penland expressly asked the Defendant as to the reason for her dismissal, and the Defendant simply informed her that it was no longer his pleasure to continue her employment. The Court finds that Plaintiff Penland's requests are sufficient to invoke her due process rights. See *Rosenstein,* 876 F.2d at 396 ("A discharged employee need not use the term 'name-clearing hearing.' ").

■ As for Plaintiff Jackson, the record suggests that he never requested a hearing after his dismissal, but that he had been informed of the response to Plaintiff Penland's request suggesting that the Plaintiffs could not appeal their dismissals. Penland Affidavit; compare *Morrash v. Strobel,* 842 F.2d 64, 69 (4th Cir.1987) (no indication that plaintiff's statutorily created rights would have been denied him if he had elected to invoke them). Under these circumstances, Plaintiff Jackson's failure to request a name clearing hearing should not prevent him from complaining that one was not afforded.

In short, the Defendant is not entitled to summary judgment on this issue against either Plaintiff.

tions omitted) (elements are (1) false statement of a stigmatizing nature; (2) attending a governmental employee's discharge; (3) made public by the governmental employer without a meaningful opportunity for the employee to refute the charge).

3. The transcript of an August 5, 1993, report on WLOS–TV indicates that the Defendant stated, "[a]nytime we have an assault ...," implying that an assault had occurred, and stated that "... we don't like for these things to happen," implying that such a thing had in fact happened. Exhibit 4 *attached to* Blancato Affidavit.

4. The provisions of the Policy and Procedure Manual for the Buncombe County Sheriff's Department indicate that a disciplined employee has the right to appeal a disciplinary action to the Sheriff or a Sheriff's Advisory Board within

five days of the action. The Policy and Procedure Manual also indicates that all disciplinary actions would be reviewed by the "Sheriff's Civilian Review Board," which apparently refers to the Personnel Advisory Board established by Chapter 298 of the 1973 North Carolina Session Laws. However, as indicated above, this statute provides that employees have the right to appeal dismissals to the Personnel Advisory Board, not that the Personnel Advisory Board will simply review decisions of the Sheriff or the Sheriff's Advisory Board. Furthermore, the statute does not require that employees exercise this right to appeal within five days of the employee's dismissal, as the Policy and Procedure Manual apparently requires. Exhibit 10 *attached to* Affidavit of Defendant Charles H. Long, filed October 16, 1995.

### 3. Deprivation Claims under the North Carolina Constitution.

 The term "law of the land" as used in Article I, Section 19, of the Constitution of North Carolina, is synonymous with "due process of law" as used in the Fourteenth Amendment to the United States Constitution. *In re Sterilization of Moore*, 289 N.C. 95, 98, 221 S.E.2d 307, 309 (1976). The Defendant has made no showing as to why the Plaintiffs' federally protected due process property and liberty interests would not also be protected by the North Carolina Constitution. On the contrary, North Carolina case law suggests that a property interest in continued employment is protected by the North Carolina Constitution, if the plaintiff asserts a sufficient basis for his claim of entitlement. *Peele v. Provident Mut. Life Ins. Co.*, 90 N.C.App. 447, 450, 368 S.E.2d 892, 894–95, *rev. denied, appeal dismissed*, 323 N.C. 366, 373 S.E.2d 547 (1988). Similarly, North Carolina case law suggests that the right to work and earn a livelihood is a liberty interest protected by the North Carolina Constitution, and that the term "liberty" as used in Article I, Section 19, is as extensive as the same term used in the Fourteenth Amendment to the United States Constitution. *In re Certificate of Need for Aston Park Hosp., Inc.*, 282 N.C. 542, 550, 193 S.E.2d 729, 735 (1973); *Bulova Watch Co., Inc. v. Brand Distrib. of N. Wilkesboro, Inc.*, 285 N.C. 467, 477–78, 206 S.E.2d 141, 148 (1974). The Defendant's unsubstantiated assertions do not entitle him to summary judgment on this issue against either Plaintiff.

### 4. State Law Defamation Claims.

The Defendant contends that he is entitled to summary judgment on the Plaintiffs' defamation claims because all of his statements were true, and because the Plaintiffs are "public officials" who cannot prove that he acted with actual malice. The Court has already addressed this first contention, and will now address the standard that the Plaintiffs must meet under *New York Times v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

 The question of whether a defamed plaintiff is a "public official" under *Sullivan* is a question of federal, not state, law. *Rosenblatt v. Baer*, 383 U.S. 75, 84, 86 S.Ct. 669, 675, 15 L.Ed.2d 597 (1966). At the very least, the "public official" designation applies to those among the hierarchy of government employees who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs. *Id.* at 85, 86 S.Ct. at 675–76. Moreover, the designation would not apply simply because a statement defamatory of some person in government employ catches the public's interest; instead, the employee's position must be one which would invite public scrutiny and discussion of the person holding it, entirely apart from the scrutiny and discussion occasioned by the particular charges in controversy. *Id.* at 86 n. 13, 86 S.Ct. at 676 n. 13. Initially, the Court finds that there is a factual dispute as to whether the Plaintiffs are in fact "deputy sheriffs," as the Defendant contends. Nonetheless, on the basis of the record to date, the Court finds that the Plaintiffs are not persons who have, or appear to the public to have, substantial responsibility for or control over the conduct of governmental affairs, and therefore are not "public officials" for the purposes of *Sullivan*. Finally, even if the Plaintiffs were deemed to be "public officials," the Court finds that a jury could determine that the Defendant acted with reckless disregard for the truth. See *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 1325–26, 20 L.Ed.2d 262 (1968). Therefore, the Defendant is not entitled to summary judgment against either Plaintiff on this issue.

### 5. Eleventh Amendment Immunity.

 The Defendant contends that a sheriff sued in his official capacity is not a "person" under 42 U.S.C. § 1983. If a sheriff is considered to be a state official, then he is entitled to Eleventh Amendment immunity and is not a "person" under Section 1983; however, if a sheriff is considered to be a local or county official, then he is susceptible to suit under Section 1983.

 Although the Defendant contends that a sheriff is a state official under North Carolina law, the state law classification is not dispositive for purposes of Section 1983.

*Dotson v. Chester,* 937 F.2d 920, 926 (4th Cir.1991). Instead, a sheriff may sometimes be treated as a state official and sometimes as a local official, depending upon the particular function which the sheriff was performing. *Id.* Because this issue has not been fully addressed by either party, the facts needed to make such a determination are not before the Court. Furthermore, the Court has insufficient information to determine whether the Defendant might otherwise be entitled to Eleventh Amendment immunity. Therefore, the Defendant's motion for summary judgment on this basis shall be denied.

Alternatively, the Defendant Long contends that the Plaintiffs have failed to state claims against him in his official capacity because they have not alleged any custom or policy to deprive employees of their due process rights. Again, the facts needed to make a determination on this issue are not before the Court, and the Defendant's motion for summary judgment on this issue must be denied.

### 6. Qualified Immunity.

 A public official or employee is entitled to qualified immunity for civil damages unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). As clarified by the Fourth Circuit:

> The test of qualified immunity for [public officials or employees] sued under 42 U.S.C. § 1983 is whether in performing discretionary functions, they have engaged in conduct that violates "clearly established constitutional rights of which a reasonable person would have known." Immunity may thus be established either on the basis that the right allegedly (or actually) violated was not at the time one "clearly established," or that, though "clearly established" (and violated), it was one that a "reasonable" person in the [official's] position could have failed to appreciate would be violated by his conduct.... [R]uling on a defense of qualified immunity therefore requires three distinct steps: (1) identification of the specific right allegedly violated; (2) determining whether at the time of the alleged violation the right was clearly established; and (3) if so, then determining whether a reasonable person in the [official's] position would have known that doing what he did would violate that right. Moreover, ... in determining whether the specific right allegedly violated was "clearly established" at the time of the purported violation, the proper focus is not upon the right "at its most general or abstract level, but at the level of its application to the specific conduct being challenged."

*Simmons v. Poe,* 47 F.3d 1370, 1385 (4th Cir.1995) (citations omitted). In this case, the Plaintiffs allege that the specific rights violated were the right to continued employment provided by Chapter 297 of the North Carolina Session Laws of 1973, and the right to a name clearing hearing after being discharged in a manner that damaged their good names, reputation, honor, or integrity, and foreclosed their liberty to take advantage of future employment opportunities. *Beckham,* 756 F.2d at 1038. Based upon the facts alleged by the Plaintiffs, the Court finds that both of these rights were clearly established at the time of the alleged violations. Specifically, the Defendant allegedly dismissed the Plaintiffs in disregard of the provisions of Chapter 297, which gives employees who contend that they were dismissed for reasons not related to merit or fitness the right to appeal to the Personnel Advisory Board, and which empowers the Board to hear such appeals. In addition, the Defendant allegedly dismissed the Plaintiffs in a manner that linked their dismissals to the sexual assault of an inmate without providing them with a name clearing hearing. However, the Court finds that there are factual issues both as to the Defendant's actual conduct, and as to the reasonableness of this conduct. Therefore, the Defendant's motion for summary judgment on the grounds of qualified immunity must be denied.

### 7. Defendant's Motion to Amend Answer.

The Court notes that Rule 15(a) of the Federal Rules of Civil Procedure requires that leave to amend pleadings "shall be freely given when justice so requires." Fed.

R.Civ.P. 15(a). The Defendant's Motion to Amend Answer shall be granted.

**8. Plaintiff's Request for a Hearing.**

The Court finds that a hearing on the Defendants' Motion for Summary Judgment is unnecessary, and the request shall be denied.

## IV. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's Motion for Summary Judgment is **DENIED** without prejudice, and the Defendant may make appropriate renewed motions during the trial of this matter;

**IT IS FURTHER ORDERED** that the Defendant's Motion to Amend Answer is **GRANTED;** and

**IT IS FURTHER ORDERED** that the Plaintiffs' request for a hearing on the Defendant's Motion for Summary Judgment is **DENIED.**